IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANAL FARHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-CV-00168 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| 2715 NMA LLC and M. FISHMAN & COMPANY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Manal Farhan brings the instant eight-count complaint against defendants 2715 NMA LLC and M. Fishman & Company (collectively, "defendants"). Counts I through IV allege violations of the Fair Housing Act ("FHA"); Counts I and II allege violations of 42 U.S.C. § 3604(b) for unlawful discrimination because of national origin, and Counts III and IV allege violations of 42 U.S.C. § 3617 for retaliation for protected conduct. Count V alleges unfair and oppressive business practices in violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/.[1] Counts VI and VII allege violations of the Chicago Residential Landlord and Tenant Ordinance ("CRLTO"), 5-12-070 and 5-12-110, and 5-12-140, respectively. Last, Count VIII seeks declaratory relief under Illinois law, in the form of an order enjoining and prohibiting defendants from evicting or dispossessing plaintiff.

On January 8, 2024, defendants moved to dismiss Counts I–V, VII, and VIII of plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 11). That same day, defendants filed their answer to Count VI, as well as their counterclaim for

---

[1] Plaintiff incorrectly cites the ICFA as 815 ILCS 510/, which is the citation for the Illinois Uniform Deceptive Trade Practices Act.

1

eviction, pursuant to 735 ILCS 5/9-101 (Doc. 10). On February 8, 2024, plaintiff moved to dismiss defendants' counterclaim for failure to state a claim pursuant to Rule 12(b)(6) (Doc. 17). For the reasons discussed below, the court grants defendants' motion (Doc. 11) in part, and declines to exercise supplementary jurisdiction over the remaining counts, as well as defendants' counterclaim.

## BACKGROUND

According to the factual allegations in plaintiff's complaint, plaintiff is a first-generation Palestinian-American, and identifies as Palestinian by national origin and ethnicity. Plaintiff, as tenant, entered into a written lease agreement with defendants, as landlords, for an apartment in Chicago, Illinois, on or about October 26, 2021, and a second lease on or about September 11, 2023. Plaintiff states that she paid rent through and including December 2023.[2]

On or about October 27, 2023, plaintiff alleges that she "securely displayed" a Palestinian flag in her apartment window "to show solidarity with her people." According to plaintiff, "the flag was small, unobtrusive, and was positioned with the small flagpole inside [her] unit and the flag just outside, abutting [her] windowsill." Plaintiff alleges that defendants then accepted her November rent with "full knowledge of the existence of the flag, which was publicly displayed and in the front of the building."

Plaintiff states that on or about November 13, 2023, Vaida Sleiniene ("Sleiniene"), the property manager for the building, called plaintiff on the telephone. According to plaintiff, Sleiniene "stated that the purpose of the call was a complaint that Defendants had received about Plaintiff's Palestinian flag," and "that Defendants were instructing Plaintiff to remove the flag." Further, plaintiff alleges that Sleiniene explained that "because there is a conflict [in Gaza], we

---

[2] The complaint was filed in state court in December 2023, and removed to federal court on January 5, 2024.

2

want to remain neutral," and that "the Defendants' policy was that tenants of Defendants are required to remain neutral in the so-called 'Israeli-Palestinian conflict.'" (Brackets in complaint). Plaintiff states that she responded that "she is Palestinian and flying the flag to 'express love and pride' in her heritage." Sleiniene then allegedly stated that "this was unacceptable," and if plaintiff refused to remain neutral, she would be evicted.

Plaintiff did not remove the flag from her window, and on or about November 22, 2023, the maintenance engineer for the building delivered to plaintiff a ten-day notice of termination of plaintiff's tenancy, which stated that her lease was terminated because, according to plaintiff, "part of her flag was out of the window." Plaintiff complains, however, that "the lease provision referenced in the notice of termination did not prohibit the way Plaintiff positioned the flag," and Sleiniene allegedly told plaintiff that she "would not be permitted to have the flag completely inside her window either, because that was not 'neutral.'" Moreover, plaintiff alleges that "other tenants publicly display flags and artwork in their windows in the same or substantially similar manner as Plaintiff," including "Christmas or holiday decorations, winter seasonal art such as snowflakes, and/or Chanukah menorahs," but allegedly have not received notices of termination of tenancy.

Defendants attach plaintiff's lease to their counterclaim.[3] Section 2.2, subsection 1 of the lease provides that, "Lessee shall not place nor permit any article or antenna outside the windows, or on the exterior walls, or on the roof of the building, and shall not throw or drop any article out of any window." According to defendants, the notice of termination stated that plaintiff's failure to cure the lease violation by removing the flag on or before the expiration of

---

[3] Defendants correctly explain that although plaintiff did not attach a copy of the lease to her complaint, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim," as here. See Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).

ten days after service would result in termination of the lease. By failing to vacate the premises after termination of the lease, defendants claim that plaintiff unlawfully withholds possession of the apartment under Illinois law.

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## DISCUSSION

Defendants move to dismiss Counts I–V, VII, and VIII of plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6). Regarding Counts I–IV, defendants argue that plaintiff has not plausibly alleged that defendants violated §§ 3604(b) and 3617 of the FHA. Defendants also argue that plaintiff has not plausibly alleged that they violated the ICFA in Count V, and that, even assuming that plaintiff's allegations in Count VII are true, defendant's alleged conduct would not fall under § 5-12-140 of the CRLTO. Last, defendants argue that the court should dismiss Count VIII because the declaratory relief that plaintiff seeks would "deprive[ ] Defendants from being the natural plaintiff in the eviction counterclaim." The court separately addresses each argument.

First, defendants argue that plaintiff fails to plausibly allege that defendants violated

4

§ 3604(b) of the FHA, which provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Plaintiff claims that defendants have violated § 3604(b) by: (1) creating and enforcing a policy that tenants must be "neutral" on the "Israeli-Palestinian conflict"; (2) enforcing such policy by not permitting plaintiff to display a Palestinian flag; and (3) serving a termination notice on plaintiff. Defendants counter that their alleged prohibition on plaintiff's display of a Palestinian flag is not discrimination because of national origin; rather, defendants argue that "at most [plaintiff] alleges that Defendants acted against her based on her political views." (Emphasis in original). Defendants assert that "the FHA does not bar defendants from creating or enforcing rules based on political beliefs."

Plaintiff counters that she "is alleging that this would not be happening if she flew a Ukrainian flag in her window instead of a Palestinian one," because, according to plaintiff, defendants have a neutrality policy regarding only the Israeli-Palestinian conflict, not all conflicts.[4] Further, plaintiff argues that even if the court determines that the policy is facially neutral, "[a] facially neutral rule may be interpreted in a manner that constitutes intentional discrimination or disparate impact." Intentional discrimination requires discriminatory intent or motive. Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507, 2513 (2015).

Thus, as plaintiff argues, a "landlord is not saved from a discrimination claim by a facially neutral lease provision they enforce on a discriminatory basis." (Emphasis in original omitted). On a disparate impact claim, a plaintiff must allege that a landlord's practice has a

---
[4] Plaintiff's complaint does not state anything specific about Ukrainian flags.

5

"disproportionately adverse effect on minorities," and is "otherwise unjustified by a legitimate rationale." See Texas Dep't of Hous., 135 S. Ct. at 2513. Plaintiff emphasizes that defendants allegedly enforce the policy on a discriminatory basis because "other tenants publicly display flags and artwork in their windows in the same or substantially similar manner as Plaintiff," including "Christmas or holiday decorations, winter seasonal art such as snowflakes, and/or Chanukah menorahs," without receiving eviction notices.

The court is not persuaded by plaintiff's arguments. First, plaintiff does not allege in her complaint, as she argues in her brief, that defendants have a "ban on Palestinian flags." (Emphasis in original). She alleges only that defendants have a policy of neutrality that, as enforced, required her to remove her flag from her windowsill (whether inside or outside).[5] Assuming as true that other tenants display flags, artwork, and decorations (including religious decorations) in their windows, and that defendants have not asked these tenants to remove these displays, plaintiff still does not allege that tenants are treated differently based on the national origin of the tenant. In fact, she does not offer any factual allegations about the national origins of the other tenants who have allegedly displayed such flags, artwork, and decorations. While plaintiff implies that the Palestinian flag is the symbol of a nation, she does not plausibly allege that plaintiff was discriminated against based on her national origin, rather than her political beliefs in support of the Palestinian cause.

For example, it would be an easier case if plaintiff, who identifies as Palestinian, instead alleged that she flew an Israeli flag over her windowsill and was asked by defendants to remove the flag. In such a case, it would clearly be implausible for plaintiff to claim that she was

---

[5] While plaintiff alleges that her flag was "just outside, abutting Plaintiff's windowsill," she alleges earlier in the complaint that she "securely displayed that flag in her apartment window, and later alleges that "other tenants also publicly display flags and artwork in their windows in the same or substantially similar manner as Plaintiff." (Emphasis added). The court need not resolve this inconsistency.

discriminated against based on her national origin, because she does not allege that she is Israeli, or Jewish.[6] Yet, the Israeli flag also symbolizes a nation. This is why the court's reasoning in Hammad v. Dynamo Stadium, LLC, No. H-14-1938, 2015 WL 6965215 (S.D. Tex. Nov. 10, 2015), is instructive. In Hammad, the plaintiff sued the owner of a soccer stadium for racial discrimination after stadium employees prohibited her from displaying a Palestinian flag at a soccer match between Israel and Honduras. Id. at *1. It is true, as plaintiff states, that Hammad is distinct from the instant case because the plaintiff in Hammad brought a claim pursuant to 42 U.S.C. §§ 1981 and 1983, not the FHA, and was decided on summary judgment and not motion to dismiss. Id. at *7. However, the court's reasoning in Hammad is useful where the court denied the plaintiff's claim, and determined that the defendant did not discriminate based on race. Id. at *11–12. The court explained that while the plaintiff identified as Palestinian-American, "a non-Palestinian person could have been waving her flag that day." Id. at *12. As in the instant case, the fact that the flag was associated with a nation did not mean that the act of discrimination was based on national origin rather than the defendant's policy of neutrality in the Israeli-Palestinian conflict.[7]

Defendants further argue that plaintiff "does not, and cannot, allege that Defendants knew of [plaintiff's] national origin at the time their employee allegedly told [plaintiff] she had to be neutral," and the court agrees. Plaintiff counters that she "explained [to Sleiniene] that she is Palestinian and flying the flag to 'express love and pride' in her heritage," but plaintiff fails to allege that defendants knew that she is Palestinian when Sleiniene called plaintiff and asked her

---

[6] In her response, plaintiff appears to concede that defendants' alleged policy would impact non-Palestinian tenants, such as pro-Israeli tenants when she states that "[t]he effect of a policy requiring tenants to be neutral in the Israeli-Palestinian conflict will be disproportionately felt by Israeli and Palestinian tenants."

[7] Like the court in Hammad, this court "acknowledges that Plaintiff's support for Palestine is closely linked with her race, and her support for Palestine is an important means of expressing her identity." Id. at *12.

to remove the flag. Based on plaintiff's complaint, it was only during the course of plaintiff's conversation with Sleiniene, <u>after</u> Sleiniene explained the neutrality policy, that plaintiff stated that she is Palestinian. Thus, plaintiff's own allegations contradict her argument.

Put another away, according to the complaint, Sleiniene would have demanded that plaintiff remove the flag regardless of plaintiff's national origin. Plaintiff could have told Sleiniene that she was Jordanian, Egyptian, Lebanese, Israeli, Syrian, or any other national origin, but defendants still would have enforced their neutrality policy, apparently to avoid conflict among their tenants. That policy was directed at the political nature of the war, not the national origin of defendants' tenants. Although defendants' policy might seem to implicate First Amendment issues, defendants are not state actors and therefore are not bound by the First Amendment of the U.S. Constitution. Consequently, plaintiff has not plausibly alleged that defendants discriminated against her "because of" and not merely "in spite of" her protected status. <u>See</u> <u>Bloch v. Frischolz</u>, 587 F.3d 771, 785 (7th Cir. 2009).

The court thus dismisses Counts I and II, which allege claims under § 3604(b) of the FHA, for failure to state a claim.

For similar reasons, the court also dismisses Counts III and IV, which allege retaliation pursuant to § 3617 of the FHA. Section 3617 provides that it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted by section 3603, 3604, 3605, or 3606 of this title."

To prevail on her claim pursuant § 3617 claim, plaintiff must show that: "(1) she is protected under the FHA; (2) she was engaged in the exercise or enjoyment of her fair housing rights; (3) defendants coerced, threated, intimidated, or interfered with plaintiff on account of her

8

protected activity under the FHA; and (4) defendants were motivated by an intent to discriminate." See Bloch v. Frischolz, 587 F.3d 771, 783 (7th Cir. 2009). Plaintiff alleges that her "her actions in refusing to comply with Defendants' 'neutrality' policy were protected conduct under Section 3617," and "[b]y issuing a termination notice to Plaintiff, Defendants retaliated against Plaintiff and prohibited her from exercising [her] protected rights."

Conversely, defendants argue that interference under § 3617 "is more than a quarrel among neighbors or an isolated act of discrimination, but rather is a pattern of harassment, invidiously motivated." Id. (Internal quotations omitted). They argue that allegedly asking plaintiff "to remain neutral and remove a Palestinian flag" does not constitute a "pattern of harassment, invidiously motived," that is necessary to state a claim under § 3617 of the FHA.

The court finds that plaintiff has not plausibly alleged that defendants violated § 3617 by interfering with plaintiff's exercise or enjoyment of her fair housing rights on account of "her actions in refusing to comply with Defendants' 'neutrality' policy.'" As discussed above, the court concludes that plaintiff has failed to allege that defendants enforced their policy based on plaintiff's national origin. The court also concludes that plaintiff has not plausibly alleged that defendants intended to do so. The Seventh Circuit has defined discriminatory intent as "more than knowledge that a certain action (or non-action) will cause certain discriminatory results," but "a subjective desire or wish for discriminatory results to occur." See E.E.O.C. v. Chicago Miniature Lamp Works, 947 F.2d 292, 299 (7th Cir. 1991). Plaintiff's complaint does not allege direct or circumstantial evidence that defendants subjectively wished to discriminate against Palestinian-Americans. See Zayadeen v. Abbott Molecular, Inc., No. 10 C 4621, 2013 WL 361726, at *12 (N.D. Ill. Jan. 30, 2013).

Thus, plaintiff has not alleged a pattern of harassment by defendants, much less a pattern

of harassment motivated by discriminatory intent, that interfered with the exercise and enjoyment of her fair housing rights. The court dismisses Counts III and IV under § 3617 of the FHA.

Accordingly, because the court grants defendants' motion to dismiss Counts I–IV, the court dismisses all federal claims at issue. The court declines to exercise supplemental jurisdiction over the remaining state law counts (IV–VIII) of plaintiff's complaint, and defendants' counterclaim for eviction pursuant to 735 ILCS 5/9-101. See 28 U.S.C. § 1367(c)(3). The court dismisses those claims without prejudice.

## CONCLUSION

For the reasons stated above, the court grants defendants' motion to dismiss Counts I–IV of plaintiff's complaint for failure to state a claim (Doc. 11). The court also declines to exercise supplemental jurisdiction over the remaining state law counts (IV–VIII) of plaintiff's complaint, and defendants' counterclaim for eviction pursuant to 735 ILCS 5/9-101. The court dismisses those claims without prejudice, and strikes as moot the pending briefing schedule on plaintiff's motion to dismiss the counterclaim.

**ENTER:**

Robert W. Gettleman
**United States District Judge**

**DATE: March 18, 2024**